UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

LIONESS VIZIONS, LLC, a Ohio )
limited liability company, )
ANGENITA CHILDS, an individual, )
and DELINA HILL-BROOKER, )
an individual, )
  )
       vs. )     CIVIL ACTION NO.:
  )
RHASHA HOOSIER, an individual, )
MIKEL HOOSIER, an individual, )
REIGN MEDIA GROUP, an unidentified )
company, ROMANTIC REIGN GROUP, ) **1 : 1 2 -cv- 0 1 0 9 TWP -TAB**
an unidentified company. )

## VERIFIED COMPLAINT

Comes now, Lioness Vizions LLC, Angenita Childs, and Delina Hill-Brooker, by their undersigned counsel, and for their complaint against Defendants Rhasha Hoosier, Mikel Hoosier, Reign Media Group, and Romantic Reign Group, allege the following:

### THE PARTIES

1.     Plaintiff LIONESS VIZIONS, LLC (hereinafter referred to as "Lioness Vizions") is an Ohio limited liability company with its principal place of business being in Indianapolis, Indiana.

2.     Plaintiff ANGENITA CHILDS (hereinafter referred to as "Ms. Childs") is a resident of Marion County, City of Indianapolis, State of Indiana.

3.     Plaintiff DELINA HILL-BROOKER (hereinafter referred to as "Ms. Hill-Brooker") is a resident of Cobb County, City of Powder Springs, State of Georgia. Lioness Vizions, Ms. Childs, and Ms. Hill-Brooker are hereinafter referred to collectively as "Plaintiffs".

4.     Defendant RHASHA HOOSIER (hereinafter referred to as Ms. Hoosier) is a resident of Franklin County, City of Gahanna, State of Ohio.

5.     Defendant MIKEL HOOSIER (hereinafter referred to Mr. Hoosier) is a resident of Franklin County, City of Gahanna, State of Ohio.

6.     Ms. and Mr. Hoosier are husband and wife.

7.     Plaintiffs are of information and belief that Defendant REIGN MEDIA GROUP (hereinafter referred to as the "Reign Group") is an Ohio company with its principal place of business in the State of Ohio.

8.     Plaintiffs are of information and belief that Defendant ROMANTIC REIGN GROUP (hereinafter referred to as the "Romantic Reign Group") is an Ohio company with its principal place of business in the State of Ohio. Ms. Hoosier, Mr. Hoosier, the Reign Group, and the Romantic Reign Group are hereinafter collectively referred to as "Defendants".

## JURISDICTION

9.     This Court has subject matter jurisdiction over Plaintiffs' claims for copyright infringement and related claims pursuant to 17 U.S.C. §101, et. seq., and 28 U.S.C. §§1331 and 1338(a).

10.    This Court has supplemental jurisdiction over Plaintiffs' claims arising under the laws of Indiana pursuant to 28 U.S.C. §1367(a) because these claims are so related to Plaintiffs' claims under Federal Law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

11.    The Court has personal jurisdiction over Defendants as they contacted Ms. Childs and Ms. Hill-Brooker in Indiana and solicited their involvement in the acts which give rise to this action. Plaintiffs' claims arise out of conduct that gives rise to personal jurisdiction over Defendants. All Defendants have solicited, transacted, and are doing

business within the State of Indiana and have committed unlawful and tortuous acts both within and outside of the State of Indiana causing injury in Indiana.

## INTRADISTRICT ASSIGNMENT

12.     Since this matter is based in copyright it may be assigned to any of the three divisions of the District court for the Southern District of Indiana.

## VENUE

13.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a) because solicitation of the Plaintiffs took place within the Southern District of Indiana, a fact sufficient to confer jurisdiction under Indiana long arm statute (TR 4.4).

## INTRODUCTION

14.     This suit arises out of the resignation of Ms. Hoosier from and the unauthorized dissolution of Lioness Vizions, LLC by defendants Mr. and Ms. Hoosier, who at the time were the agent of and member of Lioness Vizions, respectfully.

15.     Lioness Vizions is in the business of producing and publishing media.

16.     Ms. Childs, Ms. Hill-Brooker, and Ms. Hoosier wrote a book.  They each are copyright claimants to the literary work, but assigned their rights to publish, promote, sell, and otherwise distribute the Book to Lioness Vizions, also a copyright claimaint.

17.     On or about August 16, 2010, defendant Ms. Hoosier resigned as member of Lioness Vizions.

18.     Prior to Ms. Hoosier's resignation, Ms. Hoosier made three unauthorized withdrawals from the Lioness Vizions bank account for $100, $60, and $240.  Plaintiffs were not aware of the withdrawals until Ms. Hoosier resigned on August 16, 2010.

19.     On or about August 31, 2010, defendant Ms. Hoosier notified Ms. Hill-Brooker and Ms. Childs that she dissolved Lioness Vizions without the knowledge of or proper member vote from Ms. Childs and Ms. Hill Brooker.

3

20.     Since then, Defendants have been exploiting, selling and otherwise distributing the Book without authorization or providing an accounting/profits to Plaintiffs, despite that right belonging solely to Lioness Vizions.

## FACTUAL BACKGROUND

### A.     Creation of the Book

21.     Ms. Childs and Ms. Hoosier met approximately twelve (12) years ago through a mutual friend. They remained acquaintances until the incidents described herein.

22.     Ms. Hill-Brooker and Ms. Hoosier met approximately fifteen (15) years ago; they made their acquaintance as distant relatives.

23.     On or about July 6, 2008, Ms. Hoosier contacted Ms. Childs via telephone. During their conversation, Ms. Childs suggested that she (referring to herself) should write a book. Ms. Hoosier agreed and said that she too had an idea to write a book. The women discovered that they shared stories of suffering and triumph over sexual abuse at the hands of men who were close to them, drug abuse from isolation, lack of self-esteem and depression, physical and emotional abuse from those who were closest to them.

24.     Ms. Childs and Ms. Hill-Brooker met when Ms. Hoosier invited Ms. Hill-Brooker to be an author via email dated on or about July 8, 2008.

25.     The premise of the work would be to highlight its themes by telling stories from the lives of Ms. Childs, Ms. Hill-Brooker, and Ms. Hoosier, with the hope of helping other people who are experiencing what they had already gone through.

26.     On or about July 2008, the women commenced collaboration on the Book.

27.     On or about February/March 2009, the parties began researching potential publishing companies – to no avail.

//

4

**B.   Creation of Lioness Vizions LLC, the Operating Agreement, and Procedures Manual**

28.   On or about April/May 2009, Ms. Childs and Ms. Hill-Brooker began researching how to create their own publishing company. The parties created their own publishing and media company to publish, sell, and otherwise distribute the Book. The name of the company became Lioness Vizions.

29.   Lioness Vizions was formed as a domestic for-profit limited liability company and its articles of organization were filed in the state of Ohio. Defendant Mr. Hoosier was named as the Original Appointment of Agent for Lioness Vizions. Mr. Hoosier accepted that appointment by executing the proper form and filing it with the Ohio Secretary of State.

30.   On or about April 22, 2009, Ms. Childs, Ms. Hill-Brooker, and Ms. Hoosier executed an agreement to govern the conduct of each of them in Lioness Vizions (hereinafter referred to as the "Agreement"). The Agreement states:

> "We each agree to have Mikal Hoosier as our project manager. Before any money is distributed or decisions are made for the company he will have the written OK by all (3) three parties. [...] All initial costs for start up fees will be equally divided by all three parties. [...] It is agreed between all three parties that 70% of the sale of the book will go back into the company and be used for reprints, shipping, website costs, and travel costs. The remaining 30% will be divided equally between Delina, Rhasha, and Angenita."

31.   Ms. Hoosier and Mr. Hoosier obtained the signature of Ms. Childs on this Agreement and the Articles of Organization while in Indiana. Ms. Hoosier signed the Agreement and the Articles of Organization at Ms. Child's home in Indiana.

32.   In accordance with the Agreement, defendant Mr. Hoosier filed Articles of Organization for a Domestic Limited Liability Company in the state of Ohio on behalf of Lioness Vizions. The application was signed by the parties on April 22, 2009. The certificate of existence was issued on May 4, 2009. Attached hereto as Exhibit "1" is a true and accurate copy of the Articles of Organization.

33.     In addition to the Agreement, Ms. Hoosier, Ms. Hill-Brooker, and Ms. Childs created a manual titled: "Lioness Vizions Standard Procedures". On page three (3) of that procedures manual is a section called "Conflict Resolution". That section states:

> "[i]n the event of a conflict, all the women will air out the conflict via phone. In the event a decision has to be made, a 2/3 majority vote wins out the decision. However, before any decision is made, careful research must be conducted by all three parties, then revisited at a later time. No one person shall make a decision for the business without the consent of the other owners."

A true and accurate copy of the Procedures Manual is attached hereto as Exhibit "2".

34.     In addition, the Procedures Manual states on page four (4) in a section called "Projects and Divisions of Proceeds", in pertinent part:

> "any proceeds made from any project that has a positive outcome, **meaning profit**, those monies will be divided as follows: the first three years — 70% business, 30% owners."

(emphasis added).

35.     The Book is entitled *Revealing and Healing: 3 Women's Stories of Survival.* It has been registered with the Copyright Office as a literary work. Copyright claimants of the work are: Ms. Hoosier, Ms. Childs, Ms. Hill-Brooker, and Lioness Vizions, LLC. A true and accurate copy of the copyright registration number is attached hereto as Exhibit "3".

36.     On or about April 22, 2009, Ms. Hoosier, Ms. Hill-Brooker, and Ms. Childs assigned to Lioness Vizions the right to publish, promote, sell, and otherwise distribute the Book and assigned Lioness Visions 70% ownership of copyrights and 10% ownership of copyrights to each of them individually. Attached hereto as Exhibit "4" is a true and correct copy of the signed Agreement executing this assignment.

37.     Lioness Vizions entertained numerous opportunities to exploit and sell the Book.

//

6

C.   **Unauthorized dissolution and wind up of business**

38.    On or about August 16, 2010, Ms. Hoosier sent an email to Ms. Childs and Ms. Hill-Brooker stating that she never wanted to be a part of a business and just wanted to be an author of a book.  She stated that she was resigning from the company and had already withdrawn "her portion" from the bank account of Lioness Vizions.  A true and accurate copy of that email is attached hereto as Exhibit "5".

39.    On or about August 23, 2010, Ms. Hill-Brooker and Ms. Childs sent Ms. Hoosier a formal written letter in response to Ms. Hoosier's resignation letter.  The letter said that Lioness Vizions accepted her resignation, and demanded that Ms. Hoosier no longer utilize the Lioness Vizions name and that she formally remove herself from all accounts, including the business license and registration.  It also requested that she return post office box keys, all Lioness Vizions apparel, all Lioness Vizions merchandise, books, CDs, all mail and business documents pertaining to Lioness Vizions, all checkbooks, checks, and business cards, promotional pens, and all marketing flyers.  The letter also stated that the withdrawal from the bank account bank account was unauthorized.  A true and accurate copy of that letter is attached hereto as Exhibit "6".

40.    On or about August 31, 2010 Ms. Hoosier sent an email to Ms. Childs and Ms. Hill-Brooker stating that she had Lioness Vizions dissolved.  Attached hereto as Exhibit "7" is a true and accurate copy of that email along with a copy of the certificate of dissolution of Lioness Vizions.  Dissolution was completed by the agent of the Company, Mr. Hoosier, without consent from Ms. Childs or Ms. Hill-Brooker per the Agreement.[1]

41.    Prior to her resignation, Ms. Hoosier was responsible for seeking opportunities for the ladies to interview or make appearances to promote the Book.  She

---

[1] Although Ms. Hoosier stated that she had the company dissolved, it was not dissolved, in fact, until December 2010.

7

had informed Ms. Childs and Ms. Hill-Brooker that she was making attempts to schedule an appearance on behalf of the ladies to appear on the Russ Parr Morning Show for an interview about the Book. Immediately upon dissolution of Lioness Vizions, Ms. Hoosier appeared on the national syndicated morning radio show, The Russ Parr Morning Show, to exploit and sell the Book. Ms. Childs and Ms. Hill-Brooker were never made aware that an interview had actually been scheduled.

42.      During the interview, Ms. Hoosier misinformed the radio host and their listeners that Ms. Childs and Ms. Hill-Brooker were a "group" named Lioness Vizions, and that she and Lioness Vizions collaborated on the Book. When Mr. Parr asked Ms. Hoosier where the book could be purchased, Ms. Hoosier mentioned only her personal website. She omitted mentioning Ms. Childs and Ms. Hill-Brooker until asked.

43.      Plaintiffs are of information and belief that Ms. Hoosier is operating under a new company names, defendants Romantic Reign Group and Reign Media Group.

44.      Ms. Hoosier continues to operate defendants Reign Media Group and Romantic Reign Group using leads and opportunities that were for Lioness Vizions. Attached hereto as Exhibit "8" are emails from Ms. Hoosier's admissions of her intent to continue using Lioness Vizions opportunities and leads.

45.      Ms. Hoosier has been not been sharing any of the profits with Ms. Childs and Ms. Hill-Brooker.

46.      Ms. Hoosier has granted interviews with media outlets, radio personalities, and posted podcasts on her YouTube site, Rhasha's Rants, all of which have omitted mentioning Lioness Vizions as the publisher. In addition, Ms. Hoosier downplays the roles of Ms. Childs and Ms. Hill-Brooker in producing the Book, referring to it as "her book". Moreover, Ms. Hoosier has forwarded emails to Ms. Childs and Ms. Hill-Brooker of her conversations with third parties telling everyone that she is no longer associated with

Lioness Vizions and stating falsities to third parties about Lioness Vizions, Ms. Childs and Ms. Hill-Brooker. Attached hereto as Exhibit "9" is a true and correct copy of such an email.

47.     Ms. Hoosier has malicious intent. Attached hereto as Exhibit "10" is a true and accurate copy of an email sent by Ms. Hoosier to Ms. Childs and Ms. Hill-Brooker of that intent.

48.     Thus, on November 22, 2010, Lioness Vizions sent Ms. Hoosier a letter demanding that she cease and desist:

1.  all promotions, marketing, or speaking of Revealing & Healing:   3 *Women's Stories of Survival* as her own work;

2.  all mentioning of Lioness Vizions as a company she solely started and dissolved, removing any wording on that she may have on any social networking websites in regards to this;

3.  all speaking engagements regarding Lioness Vizons and/or Revealing *& Healing: 3 Women's Stories of Survival,* and/or mentioning of various non-profit organization she claim to work;

4.  return of the money that was withdrawn from the Lioness Vizions as well as any money earned from sales of the Book and all remaining copies of the Book, *Revealing and Healing: 3 Women's Stories of* Survival, and the CD, Sounds of Healing.

5.  any and all recruitment initiatives; and

6.  any and all printing or copying of *Revealing and Healing: 3 Women's* Stories of Survival.

A true and accurate copy of that letter is attached hereto as Exhibit "11".

49.     Ms. Hoosier did not respond to said letter.

50.     Moreover, on or about January 19, 2011, Ms. Hoosier mailed Plaintiffs a letter stating that she paid taxes for Lioness Vizions in the state of Ohio, Florida, Georgia, Texas, Virginia, and Indiana. She stated that the funds were paid out of for Book sales from December 9, 2010 to January 19, 2011 and none of these funds were paid by the members of Lioness Vizions, Angenita Childs, or Delina Hill Brooker.  Attached hereto as Exhibit "12" is a true and accurate copy of this letter.

51.     However, on or about April 6, 2011, Ms. Hill-Brooker received a tax assessment from the State of Ohio for $1,492.78 for failure to pay taxes.

### FIRST CAUSE OF ACTION
**(Wrongful Dissolution against defendants RHASHA HOOSIER and MIKEL HOOSIER)**

52.     Plaintiffs incorporate here by reference the allegations in paragraphs 1 through 51, above, as though fully set forth herein.

53.     Pursuant to Ohio Revised Code, Title 17, Chapter 1705.43, a limited liability company is not dissolved upon the occurrence of withdrawal of a member of the company, unless the business of the company is discontinued by the consent of all of the remaining members or under a right to discontinue the company that is stated in writing in the operating agreement.

54.     Per the Agreement and the Procedural Manual, the dissolution of Lioness Vizions required a vote of all its members.

55.     There was no vote concerning dissolution of Lioness Vizions.

56.     As such, Defendant Mikel Hoosier did not have proper consent from Plaintiffs to exercise his authority as agent of Lioness Vizions to file paperwork to dissolve Lioness Vizions.

57.     As such, Plaintiffs are entitled to a court order stating that the dissolution was wrongful and all such other relief that will permit the state of Ohio to reinstate Lioness Vizions.

10

## SECOND CAUSE OF ACTION
(Copyright Infringement against All Defendants)

58.     Plaintiffs incorporate here by reference the allegations in paragraphs 1 through 51, and 53 through 57, above, as though fully set forth herein.

59.     Plaintiffs Ms. Childs and Ms. Hill-Brooker are the authors and copyright claimaints of the Book.  Their rights include all rights under U.S. Copyright Law, except what has been assigned to Lioness Vizions as publishing company.

60.     Plaintiff Lioness Vizions is the holder of the exclusive right to exploit and distribute the Book to the public.

61.     With respect to the Book, Plaintiffs Lioness Vizions, Ms. Childs, and Ms. Hill-Brooker has complied in all respects with the Copyright Act and all of the laws of the United States governing copyrights.

62.     Defendants, with notice of Plaintiffs' rights, interest, title in and to the Book, and without Plaintiffs' authorization, have directly, vicariously and/or contributorily infringed and/or induced infringement, of Plaintiffs' copyrights in violation of 17 U.S.C. § 501, et seq.

63.     All of Defendants' acts are and were performed without Plaintiffs' permission, license or consent.

64.     Defendants' infringement of Plaintiffs' copyrights has been willful, intentional and in total disregard of, and with indifference to, Plaintiffs' rights by willingly and knowingly copying, reproducing, marketing, displaying, selling, distributing and utilizing for purposes of trade and promotion unauthorized copies and exploitation of the Book.

65.     As a result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs' are entitled pursuant to 17 U.S.C. § 504 to either

disgorgement of profits and recovery of actual damages, or statutory damages.  Plaintiffs are further entitled to their attorneys' fees and costs pursuant to 17 U.S.C. § 505.

66.    The said wrongful acts of Defendants have caused, and are causing, great damage to Plaintiffs, which damage cannot be accurately computed, and therefore, unless this Court restrains Defendants from further commission of said acts, Plaintiffs will suffer irreparable injury, for which it is without an adequate remedy at law.   Accordingly Plaintiffs seek an order under 17 U.S.C. § 502 enjoining Defendants from any further infringement of Plaintiffs' copyrights.

67.    As a result of Defendants' acts alleged herein, Plaintiffs have suffered, is suffering, and will continue to suffer substantial damage to its business in the form of diversion of trade, loss of profits, injury to goodwill and reputation, and the dilution of the value of its rights, all of which are not yet fully ascertainable.

### THIRD CAUSE OF ACTION
(Right of Publicity infringement against All Defendants)

68.    Plaintiffs incorporate here by reference the allegations in paragraphs 1 through 51, 53 through 57, and 59 through 67, above, as though fully set forth herein.

69.    Defendants' intended use of Ms. Childs and Ms. Hill-Brooker's name, image, likeness, and personality violates the Indiana Right of Publicity Statute, Ind. §§32-36-1 et. seq.

70.    Defendants' intended use of Ms. Childs and Ms. Hill-Brooker's name, image, likeness, and personality is on or in connection with a product, service, commercial activity, and/or for advertising or soliciting purchases of products services, or for promoting commercial activity.

71.    Defendants do not have authority or consent to use Ms. Childs or Ms. Hill-Brooker's name, image, likeness, and personality in connection with their products, services, commercial activity, and or advertising of the same.

72.    Plaintiffs are entitled to statutory damages.

### FOURTH CAUSE OF ACTION
(Breach of Operating Agreement against defendant RHASHA HOOSIER)

73.    Plaintiffs incorporate here by reference the allegations in paragraphs 1 through 51, 53 through 57, 59 through 67, and 69 through 72, above, as though fully set forth herein.

74.    A written operating agreement existed between Ms. Childs, Ms. Hill-Brooker, and Ms. Hoosier.

75.    Ms. Hoosier had a duty to perform the Agreement in good faith and obligations under the Agreement.  Ms. Hoosier breached her duties and obligations under the Agreement.

76.    Ms. Hoosier's breach has proximately caused injury to Ms. Childs and Ms. Hill-Brooker.

### FIFTH CAUSE OF ACTION
(Breach of Fiduciary Duty against defendants RHASHA HOOSIER and MIKEL HOOSIER)

77.    Plaintiffs incorporate here by reference the allegations in paragraphs 1 through 51, 53 through 57, 59 through 67, and 69 through 72, and 74 through 76, above, as though fully set forth herein.

78.    A partnership relationship existed between Ms. Hoosier, Ms. Childs, and Ms. Hill-Brooker.

79.    An agency relationship existed between Mr. Hoosier, as agent, and the members of Lioness Vizions, as principle.

80.    As such, defendants Ms. and Ms. Hoosier owed Plaintiffs fiduciary duties of loyalty and good faith.

81.    The Russ Parr Morning Show was such one business opportunity of Lioness Vizions.

82.    Ms. Hoosier breached her fiduciary duty of loyalty to Plaintiffs by, among other things, taking many different business leads and opportunities of Lioness Vizions and using them for her sole benefit.

83.    Mr. Hoosier breached his fiduciary duty of good faith to Plaintiffs by, among other things, using his agent capacity to dissolve Lioness Vizions without proper authority or consent.

84.    These breaches have proximately caused injury to Plaintiffs.

### SIXTH CAUSE OF ACTION
(Civil Theft against defendant RHASHA HOOSIER)

85.    Plaintiffs incorporate here by reference the allegations in paragraphs 1 through 51, 53 through 57, 59 through 67, 69 through 72, 74 through 76, and 78 through 84, above, as though fully set forth herein.

86.    Defendant Ms. Hoosier knowingly or intentionally exerted unauthorized control over funds belonging solely to Lioness Vizions.

87.    Defendant Ms. Hoosier's actions constitute "conversion" as defined by Ind. Code § 35-43-4-3.

88.    Plaintiffs have suffered pecuniary damage and has incurred costs and legal fees as a result of Ms. Hoosier's conduct.

89.    Pursuant to Ind. Code § 34-24-3-1, Plaintiffs are entitled to recover treble damages, costs, attorney fees and other damages as a result of Ms. Hoosier's actions.

### SEVENTH CAUSE OF ACTION
(Tortious Interference with Existing or Potential Business Relationships against defendant RHASHA HOOSIER, REIGN MEDIA GROUP, and ROMANTIC REIGN GROUP)

90.    Plaintiffs incorporate here by reference the allegations in paragraphs 1 through 51, 53 through 57, 59 through 67, 69 through 72, 74 through 76, 78 through 84, 86 through 89, above, as though fully set forth herein.

91.     Lioness Vizions had established contractual and/or beneficial business relationships with several people and entities in connection with exploiting the Book.

92.     Defendants had knowledge of these contractual and beneficial business relationships with these third parties.

93.     Defendants possess(ed) the intent to induce those third parties to cease working with Lioness Vizions and instead work with Defendants, and so did induce.

94.     Plaintiffs have been damaged as a result of Defendants' actions.

### EIGHTH CAUSE OF ACTION
(Common Law Unfair Competition against defendant RHASHA HOOSIER, REIGN MEDIA GROUP, and ROMANTIC REIGN GROUP)

95.     Plaintiffs incorporate here by reference the allegations in paragraphs 1 through 51, 53, through 57, 59 through 67, 69 through 72, 74 through 76, 78 through 84, 86 through 89, 91 through 94, above, as though fully set forth herein.

96.     The foregoing acts of Defendants constitute unfair competition in violation of the common law of the State of Indiana.

97.     Upon information and belief, Defendants have made and will continue to make profits and gains to which they are not entitled in law or equity.

98.     Upon information and belief, Defendants intend to continue their acts, unless restrained by this Court.

99.     Defendants' acts have damages and will continue to damage and Plaintiffs have no adequate remedy at law.

### NINTH CAUSE OF ACTION
(Request for a Permanent Injunctive Relief against all Defendants)

100.     Plaintiffs incorporate here by reference the allegations in paragraphs 1 through 51, 53 through 57, 59 through 67, 69 through 72, 74 through 76, 78 through 84, 86 through 89, 91 through 94, and 96 through 99, above, as though fully set forth herein.

101.     Ms. Hoosier has resigned from the membership of Lioness Vizions.

102.   Ms. Hoosier still continues to operate in business matters and pursue business opportunities that belong to Lioness Vizions.

103.   Ms. Hoosier is receiving and holding monies, property, and assets of Lioness Vizions.

104.   Plaintiffs are of information and belief that Ms. Hoosier has scheduled another interview with the national syndicated radio show "The Russ Parr Morning Show" and scheduled additional interviews with other national syndicated radio shows, and numerous book signings.  Defendant's conduct will irreparably and permanently harm Plaintiffs for which Plaintiffs have not adequate remedy at law.

105.   The public interest would not be disserved by the issuance of injunctive relief in this instance.

**WHEREFORE,** Plaintiffs, by counsel, requests the following relief:

1.   That the Court issue a Permanent Injunction against Defendants Rhasha Hoosier, Mikel Hoosier, Romantic Reign Group, Reign Media Group, and all parties acting in concert with them, which will protect Plaintiffs' interest and rights including:

   a.  Ordering that Lioness Vizions be reinstated as a domestic limited liability company;

   b.  Enjoining Defendants from any further acts of copyright infringement;

   c.  Enjoining Defendants from engaging in any other activity constituting unfair competition with Plaintiffs.

   d.  Enjoining Defendants from misappropriating Plaintiffs personality; and

   e.  Ordering Defendants to immediately return the original and all copies of the Book and other Lioness Vizions materials and paraphernalia to Plaintiffs.

   f.  Ordering that RhashaHoosier.com, and any of Ms. Hoosier's social media sites, websites, YouTube, and email addresses and business phone lines that she uses to promote or sell the Book, be confiscated and be owned, redirected and  managed by Lioness Vizions.

g. Directing Defendants to file with this Court and serve on Plaintiffs within 30 days after entry of the injunction a report in wiritn gunder oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

2. That the court awards the following:

a. Treble damages as provided by the Indiana Civil Theft statute;

b. Disgorgement of profits, actual damages or statutory damages per 17 U.S.C. § 504;

c. Statutory damages resulting from Defendant's violations of Ms. Childs and Ms. Hill-Brooker's rights of publicity;

d. Damages caused by Defendants' breaches of contract and fiduciary duties;

e. Punitive damages in an amount sufficient to persuade Defendants, and other persons similarly situated, from engaging in similar conduct in the future;

f. The costs of this action;

g. Plaintiffs' reasonable attorneys' fees; and

h. All other just and proper relief.

**DATED:** This _24th_ day of January, 2012.

Respectfully Submitted,

Trezanay M. Atkins,  #28208-49
The Brand Infringement Firm
8206 Rockville Road, #272
Indianapolis, IN 46214
t 877.834.4007 | f 877.840.1721
tatkins@thebrandinfringementfirm.com
**ATTORNEY FOR PLAINTIFFS**

## VERIFICATION

I, SWEAR OR AFFIRM UNDER THE PENALTIES FOR PERJURY THAT THE
FOLLOWING FACTUAL REPRESENTATIONS ARE TRUE TO THE BEST OF MY
KNOWLEDGE.

Jan 23, 2012
Dated                                    ANGENITA CHILDS

_____                        _____
Dated                                    DELINA HILL-BROOKER

## VERIFICATION

I, SWEAR OR AFFIRM UNDER THE PENALTIES FOR PERJURY THAT THE FOLLOWING FACTUAL REPRESENTATIONS ARE TRUE TO THE BEST OF MY KNOWLEDGE.

_____
Dated

_____
ANGENITA CHILDS

1/23/12
Dated

DELINA HILL·BROOKER